UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A. B., by his mother B. B. *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>BREMERTON SCHOOL DISTRICT NO. 100-C, a municipal corporation; *et al.* , <br><br>Defendants. | Case No. C07-5682FDB <br><br>ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

**INTRODUCTION**

Plaintiffs are school age residents of the Frances Haddon Morgan Center (Morgan Center), a Residential Habilitation Center for individuals with developmental disabilities operated by DSHS's Division of Developmental Disabilities. Plaintiffs currently attend a classroom in the Bremerton School District's junior high building. The current classroom space in the junior high building is leased by DSHS through the Morgan Center. Because of declining enrollment and maintenance problems (leaky roof and rodent infestation) and a study that concluded that the junior high was not worth the investment that would be required to bring it up to health and safety standards, the Bremerton School District's Board of Directors decided to close the junior high building as of January 2008. The Bremerton School District (the District) informed the Morgan Center in February

ORDER - 1

2007 that the building would be closing in December 2007 and offered to assist the Center in locating another facility on or close to District property. DSHS, however, notified the School District on November 16, 2007 that it would instead be moving the Morgan Center students to a classroom on the Morgan Center campus.

## PARTIES' ARGUMENTS

### *PLAINTIFFS' MOTION FOR TRO*

Plaintiffs argue that they will suffer "serious irreparable harm should the Defendants be permitted to segregate them in an isolated classroom, on the grounds of a residential institution, that is outside of the public school." The move will occur December 19, 2007. Thus, Plaintiffs seek a TRO to prevent the Defendants from closing down the junior high school building, because once the non-disabled sixth graders move to the new school and Plaintiffs move to the Center's grounds, it will be more difficult to maintain the status quo at a later date.

Plaintiffs argue that segregating the students living at the Center from the Bremerton School District population is a violation of both state and federal anti-discrimination laws.

**A. Washington Law Against Discrimination** elements are: (1) plaintiffs have a disability; (2) Defendant operates a place of public accommodation; (3) Plaintiffs are not treated comparably to nondisabled; and (4) disability is a substantial factor in the noncomparable treatment.

**B. Section 504 of the Rehabilitation Act** forbids discrimination against individuals with disabilities by entities who receive federal funding. The School District and the DSHS receive Federal funds.

Plaintiffs argue that Defendants are poised to deprive Plaintiffs of their Equal Protection rights and the Washington Fundamental Right to Education. Also, Plaintiffs argue that the Individual with Disabilities Education Act (IDEA) is violated by the proposal to provide segregated education at the Center. Finally, Plaintiffs argue that the purpose of the Americans with Disabilities Act (ADA) is to prohibit disability based discrimination in all state and local government programs.

ORDER - 2

1   Plaintiffs argue that they need not exhaust administrative remedies because this is not
2   required where using the administrative process "would be futile or offer inadequate relief, or if the
3   agency has adopted a policy or pursued a practice of general applicability that is contrary to the law."
4   *Doe v. Arizona Dept. Of Education*, 111 F.3d 678 (D. Az. 1997).  Plaintiffs argue that the School
5   District has applied a blanket policy of excluding the residents of the Center; none of the reasons are
6   based on the unique needs of the individual students affected.  Thus, Plaintiffs argue, this type of
7   across-the-board decision is a basis for waiving the exhaustion requirements of IDEA.  *Christopher*
8   *S. v. Stanislaus County Office of Education*, 384 F.3d 1205, 1211 (9th Cir. 2004).

9   Plaintiffs argue that they will suffer irreparable harm by the denial of their fundamental right
10  to education under the Washington Constitution and the harms associated with isolation and
11  segregation of children with autism.  Autistic children suffer setbacks when there is excessive change
12  (citing Ex. 8 Schwartz Ph.D ¶ 1427).

13  Plaintiffs' assert that Defendants' harm is limited to the potential for economic loss, and that
14  the public interest is served by keeping Plaintiffs in public school.  Finally, Plaintiffs assert that the
15  Court should waive the requirement for security or bond because Plaintiffs are Medicaid recipients
16  who live in a state institution and are dependent on Defendants for their care.  Also, Plaintiffs have
17  shown a strong likelihood of success on the merits.

18  ### *BREMERTON SCHOOL DISTRICT'S RESPONSE*

19  The Bremerton School District makes the following points in opposing injunctive relief
20  against it.

21  **A.**  The State and not the School District is ultimately responsible for the provision of a free
22  appropriate public education (FAPE) to institutionalized students such as the Plaintiffs.  For students
23  who reside at home, are not institutionalized, and attend the "common schools,"  the local school
24  district in which the student resides is responsible for compliance with IDEA requirements by
25  delegation from the State.  As to institutionalized students, the State retains the ultimate obligation
26  ORDER - 3

to provide a FAPE. RCW Ch. 28A.190, entitled "Residential Education Programs," provides a specific structure for the provision of constitutionally- and statutorily-required educational services for youths institutionalized in residential schools.

The School District's obligation is to provide services (teachers, textbooks, curriculum, etc.) not facilities. DSHS is specifically required to provide the facilities (safe and healthy building and playground space, etc.)

**B.** If the Court finds that the current system of providing a FAPE to institutionalized students is flawed, the responsibility for curing that flaw lies with the State. The IDEA requires that to the maximum extent possible, children with disabilities should be educated with children who are not disabled. 20 U.S.C. § 1412(a)(5).

### *SUPERINTENDENT OF PUBLIC INSTRUCTION'S RESPONSE*

The Superintendent first provides a survey of Federal and State Special Education law followed by a survey of the respective duties of DSHS and the school districts with respect to RCW Chapter 28A.190 concerning Residential Education Programs. In summary, a "free appropriate public education" (FAPE) must be provided to eligible students with disabilities between the ages of three and twenty-one in the least restrictive environment, and to the maximum extent appropriate must be educated with children who are nondisabled. Placement is to be determined at least annually in accordance with the student's Individualized Education Program (IEP).

RCW Chapter 28A.190 directs DSHS and local school district to jointly operate education programs for certain residential schools, including the Frances Haddon Morgan Center. Under the Statute, a school district is to provide such things as personnel, textbooks, curriculum development, and discipline of students. (RCW 28A.190.030(1), (2),(3),(5). Each school district's board of directors must provide educational opportunity "shall provide an appropriate educational opportunity to children with disabilities ... in regular or special school facilities within the district or shall contract for such services with other agencies ... or shall participate in an interdistrict arrangement ...." RCW

ORDER - 4

28A.190.040.

DSHS is allocated separate duties and authority, including providing transportation for residential school students, and "safe and healthy building and playground space for the conduct of the program of education through the construction, purchase, lease or rental of such space as necessary." RCW 28A.190.040.

The Superintendent argues that she is already responsible for the general supervision of special education programs. Moreover, the Superintendent argues that the Office of the Superintendent of Public Instruction (OSPI) administers "a robust remedial scheme in accordance with the IDEA and Washington's own special education statute. OSPI regulations comprehensively detail a complaint investigation process, a mediation process, and a due process administrative hearing procedure – any or all of which plaintiffs could avail themselves of. (Citation omitted) There is even a provision for maintaining the status quo pending completion of an administrative due process proceeding. The Superintendent contends that "Plaintiffs utterly fail to explain why they could not have filed either a complaint or request for due process hearing with OSPI.

As to likelihood of success on the merits, a state education agency may be liable for failure of a local district to discharge its duties under the IDEA, certain predicates must be established by the plaintiffs: First, breach by the local district must be significant; second, the plaintiffs must give the responsible state officials adequate notice of the local agency's noncompliance; and third, the state must be afforded a reasonable opportunity to compel local compliance. The Superintendent contends that Plaintiffs do not meet the second and third elements of the test.

The second request mandating that the OSPI provide the educational services required under RCW 28A.190.030 in a non-segregated public school environment is inappropriate because that statute is directed at school districts, not OSPI.

Finally, the Superintendent argues that it is inappropriate to request injunctive relief that simply requires that the Superintendent comply with the law, which is essentially was is requested

ORDER - 5

when Plaintiffs ask that the Superintendent be ordered to "ensure that the educational goods and services required of the Bremerton School District under RCW 28A.190.030 are provided in a non-segregated public school environment." (See Plaintiffs' Proposed Order, ¶ 4.)

### *DSHS's RESPONSE*

DSHS, pointing to its statutory responsibilities, argues that it has no authority or control over Bremerton School District resources and should not be included in any injunction directed at preventing the closure of the junior high school building.

The DSHS's effort in this case is to provide temporary classroom space at the Morgan Center while this matter is being resolved. If DSHS is enjoined from offering classroom space at the Center, then Plaintiffs will receive no education at all during the time this issue is unresolved.

DSHS acknowledges that educational services must be provided within the federal and state statutory frameworks for educating students with disabilities. DSHS also acknowledges the state statutes that allocate responsibility between the school district and DSHS. DSHS contends, however, that RCW 28A.190.050 allows DSHS and the Bremerton School District to develop a cooperative arrangement for the education of the students residing at the Frances Haddon Morgan Center that is consistent with the ADA and IDEA.

Finally, DSHS argues that the injunctive relief sought against it – "... provide for the educational goods and services required of them under RCW 28A.190.040 in a non-segregated public school environment" – is something that DSHS already does.

DSHS submitted with its response exhibits reflecting correspondence between Bremerton School District and the Superintendent of the Frances Haddon Morgan Center (the Center). In that correspondence, the School District's May 31, 2007 letter (Ex. 1) advises the Center of the change in availability of classroom space in the Bremerton School District to Center students as of November 30, 2007 and expresses concern regarding the impact of the increased number of Morgan Center residents being enrolled in the Bremerton School District. The School District emphasizes

ORDER - 6

that the State must fully fund all duties school districts undertake pursuant to contract, citing RCW 28A.190.050 and .030.  The School District then points out that the current funding it receives limits its ability to carry out its statutory duties.  In summary, the School District concludes in that letter that "the time for finding and preparing a safe and appropriate new facility for Morgan Center students is falling short. In addition, the change in the number of students that must be served is truly depleting the District's resources."  (*Id*. Ex. 1)

In another letter (Ex. 2), the District suggests a building that was for sale across from the Bremerton High School, that District and DSHS attorneys would negotiate the contract between them.  The letter at Ex. 3 reflects DSHS contention that educating the Center students in the Center's facilities is a temporary solution while the Center continues to seek the lease, purchase, or rental of more appropriate classroom space.  Finally, DSHS responds to the concerns of the group called Disability Rights Washington and assures this organization that while it cannot force Bremerton School District to make a building available, nevertheless, "the District understands that we want children to attend school on District campuses.  In the interim, the Department is unwilling to let FHMC [Morgan Center] residents go without education while the matter is in dispute between the parties."  (Ex. 4.)

Carol Kirk, Superintendent of the Center, submits her declaration wherein she indicates that there are now ten individuals under the age of 21, who qualify for state special education services, living at the Center.  For the last ten years, the space leased by the Center from the School District was a self-contained classroom.  Kirk states that the District has made available a classroom, but it is not large enough for the current number of students who live at the Center.  Kirk describes the process for developing an Individualized Education Plan (IEP), and that a student's placement must be chosen and decided individually in accordance with the IEP from a full continuum of placement options.  Kirk concludes that DSHS is prepared to meet its obligations under law and to pay its fair and reasonable share under RCW Chapter 28A.190.

ORDER - 7

**DISCUSSION**

A temporary restraining order is an extraordinary remedy that will be granted only when the need for immediate relief is clear. The sole purpose is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The test for whether injunctive relief is appropriate requires a plaintiff to show either a combination of probable success on the merits and the possibility of irreparable injury; or that serious questions as to these matters are raised and the balance of hardships tips sharply in the plaintiff's favor. *Department of Parks & Rec. For State of Calif. v. Bazaar Del Mundo, Inc.,* 448 F.3d 1118, 1123 (9th Cir 2006).

> [T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases ... [I]f the plaintiff shows no chance of success on the merits ... the injunction should not issue, because as an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.

*Id.* at 1123-24. In addition, courts must consider the public interest as a factor in balancing the hardships when the public interest may be affected. *Id.* at 1124.

The parties do not generally dispute their obligations under federal and state law in providing education for the plaintiffs, but dispute that the injunctive relief sought is inappropriate.

Plaintiffs' want the Court to prevent the Defendants from closing down the junior high school building in order to maintain the status quo and to direct the defendants to carry out their duties under Federal and State law.

The School District contends that the ultimate responsibility for providing a FAPE to students such as Plaintiffs is with the State, that it must provide the education while DSHS provides the facilities. The reason for the School Board's decision to close the junior high school building where Plaintiffs were attending class, reflects the public interest in education being carried out in a safe and healthy environment.

The Superintendent contends that injunctive relief requiring compliance with the law should

ORDER - 8

not be granted.  Moreover, on the merits, Plaintiffs have not given the responsible state officials adequate notice of a breach of duties under the IDEA by the local agency, and that the State must be afforded a reasonable opportunity to compel local compliance.

DSHS acknowledges its duties under applicable law, but contends that DSHS and the School District must work cooperatively to arrive at a solution to the current problem.

The parties in this case are faced with undeniable problems: loss of a building that has deteriorated to the point that it is not cost effective to rehabilitate it, an increase in the number of students with disabilities at the Morgan Center, and lack of adequate space in the remaining buildings to educate students from the Morgan Center.  There appear to have been good faith efforts by the School District and the Center to find a solution, but time to do so is running out.  Funding from the State appears to be problematic.  The Center's decision to educate its resident students at its own site as a temporary solution is reasonable.  All of the Defendants recognize their obligations under Federal and State law, but undeniable problems create the present impediment to an optimum solution.

Injunctive relief directing DSHS, the Bremerton School District, and the Office of the Superintendent of Public Instruction to follow the law, as set forth in Plaintiffs' proposed Order Granting Temporary Restraining Order, is not appropriate.  Plaintiffs state in their memorandum that they seek a TRO to prevent Defendants from closing down the junior high school building, but neither DSHS nor the Superintendent should be ordered to do this when this was a decision of the Bremerton School District's School Board.  Moreover, the decision of the School Board appears to be reasonable, and there is no showing that it had no authority to make this decision.  Additionally, it is in the best interest of the students residing at the Center to continue their education while a more permanent solution to the problem of finding space is found.  The best solution can be found by the School District and the DSHS working together – which it appears they are – to find a solution, consulting where necessary with other State entities in order to address specific problems.

ORDER - 9

Under the circumstances, Plaintiffs have failed to show either a combination of probable success on the merits and the possibility of irreparable injury; or that serious questions as to these matters are raised and the balance of hardships tips sharply in the plaintiffs' favor. Plaintiffs' Motion for A Temporary Restraining Order must be denied.

NOW, THEREFORE, IT IS ORDERED: Plaintiffs' Motion for A Temporary Restraining Order is DENIED.

DATED this 19th day of December, 2007.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 10